**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GULF MARINE PRODUCTS CO., INC.** | **CIVIL ACTION** |
| **V.** | **NO. 25-1605** |
| **NEW ORLEANS COLD STORAGE AND WAREHOUSE COMPANY, LLC** | **SECTION: C (1)** |

**ORDER AND REASONS**

Before the court is Defendant's Motion to Dismiss the First Amended Complaint (R. Doc. 14). The motion is **DENIED**. The captioned matter is **STAYED** and administratively closed under 9 U.S.C. § 3. The parties are ordered to arbitration.

## I. BACKGROUND

Plaintiff, Gulf Marine Products Company, Inc. sells seafood.[1] It uses cold storage to preserve product until the product is shipped.[2] Like Gulf Marine, Louisiana Newpack Shrimp Company, Inc. sells seafood. It too uses cold storage to preserve product until it is shipped. Defendant, New Orleans Cold Storage and Warehouse Company, LLC operates a cold storage warehouse at 3411 Jourdan Road in New Orleans.[3] Lineage Logistics, LLC acquired NO Cold Storage in 2020.[4] Since then, NO Cold Storage has operated as Lineage's subsidiary.[5]

In November 2020, Lineage sent a letter (2020 term sheet) to Louisiana Newpack who was seeking to store frozen crabmeat at the Jourdan Road warehouse.[6] The 2020 term sheet covered warehouse services that Lineage "or any of its affiliated entities" provided at the Jourdan Road

---

1 R. Doc. 13 at ¶ 8.
2 *Id.*
3 *Id.* at ¶¶ 1, 10.
4 R. Doc. 14-2 at ¶¶ 4–5.
5 *Id.* at ¶ 6.
6 R. Doc. 14-3 at 6–7; *see also* R. Doc. 14-3 at 2, ¶ 6.

warehouse.[7] The 2020 term sheet expressly bound the "successors and assigns" of both Louisiana Newpack and Lineage.[8] It also provided that delivery and continued storage of product is acceptance of the terms.[9] Finally, the 2020 term sheet incorporated Lineage's "General Terms" via hyperlink to its website.[10] Under a section captioned "**ARBITRATION AND NOTICE OF CLAIM**", the "General Terms" provided in part:

> (a) In lieu of litigation, STORER and WAREHOUSE agree to submit any dispute that arises out of or is in any way connected to this Warehouse Receipt to binding arbitration administered by Judicial Arbitration and Mediation Service, Inc. and its Streamlined Arbitration Rules and Procedures then in force. The parties shall be bound by the arbitration decision and a party receiving an award may enter judgment upon the same in any federal or state court of competent jurisdiction in the applicable jurisdiction. The parties shall conduct any arbitration in the county where the warehouse facility is located, to the exclusion of all other places.[11]

On November 18, 2021, Louisiana Newpack deposited 1,390 cases of frozen lump crabmeat at the Jourdan Road warehouse.[12] NO Cold Storage issued a warehouse receipt to Louisiana Newpack.[13] That receipt also incorporated Lineage's "General Terms" by reference.[14] The receipt provided notice to Louisiana Newpack that all rights and duties related to services at the cold storage facility had been assigned to Lineage.[15]

In June 2022, Gulf Marine bought the crabmeat from Louisiana Newpack.[16] Gulf Marine did not take physical possession.[17] Rather, the crabmeat remained at the storage facility, and Gulf

---

7 R. Doc. 14-3 at 6, 8.
8 *Id.* at 7.
9 *Id.* at 7.
10 *Id.* at 6.
11 *Id.* at 24.
12 *Id.* at 5; *see also* R. Doc. 14-3 at 2, ¶ 6.
13 R. Doc. 14-3 at 11.
14 *Id.* at 11.
15 *Id.* at 11.
16 R. Doc. 13 at ¶ 15.
17 *Id.* at ¶ 15.

Marine began paying storage fees to NO Cold Storage.[18] All communications about the crabmeat were directed to Gulf Marine.[19]

Gulf Marine alleges that in 2022, NO Cold Storage misplaced 536 cases of the crabmeat.[20] Gulf Marine further alleges that, because NO Cold Storage continued to invoice Gulf Marine for all 1,390 cases, it did not know the crabmeat was missing.[21] NO Cold Storage told Gulf Marine about the missing crabmeat in May 2023.[22] After learning, Gulf Marine claims it removed the rest of its product from the Jourdan Road warehouse.[23]

Gulf Marine sued NO Cold Storage in August 2025, claiming breach of contract and depositary obligations.[24] Two months after suit was filed, NO Cold Storage allegedly found 396 of the missing cases of crabmeat, expired and worthless.[25] Gulf Marine claims 140 cases remain unaccounted for.[26]

NO Cold Storage filed the pending motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7), arguing, among other things, that the dispute is subject to arbitration and requires dismissal.[27] Gulf Marine alleges it never agreed to arbitrate and, even if it did, the arbitration clause is invalid.[28] If the matter is arbitrable, Gulf Marine asks for a stay.[29]

---

18 *Id.*
19 R. Doc. 13 at ¶¶ 15, 21–22.
20 *Id.* ¶¶ 16–17.
21 *Id.* ¶ 23.
22 *Id.* at ¶ 24.
23 *Id.* at ¶ 26.
24 R. Doc. 1 at ¶ 24.
25 R. Doc. 13 at ¶ 27.
26 *Id.*
27 R. Doc. 14-1 at 10–11, 13–16.
28 R. Doc. 27 at 9 n.2; R. Doc. 28.
29 R. Doc. 27 at 7.

## II. LEGAL STANDARD

The Federal Arbitration Act expresses a strong federal policy in favor of enforcing arbitration agreements. 9 U.S.C. §§ 1–16; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217–18 (1985); *Hughes v. Uber Tech., Inc.*, 718 F. Supp. 3d 571, 578 (E.D. La. 2024). Under the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotations omitted). Section 3 of the FAA provides that if any suit is brought in federal court "upon any issue referable to arbitration," the court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . , shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Supreme Court has directed courts to "'rigorously enforce' arbitration agreements according to their terms." *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter*, 470 U.S. at 221). "[A]ny doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration." *Safer v. Nelson Financial Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005).

When deciding whether to enforce an arbitration agreement, the court conducts a two-step inquiry. *Id.* at 293. The first step is to determine whether the parties agreed to arbitrate the dispute in question. *Id.* If so, the second step is determining "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id.* at 294 (quoting *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996)). Ordinarily both steps are questions for the court. *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).

## III. DISCUSSION

### A. The Contractual Arrangements

The November 2021 warehouse receipt effected the delivery of the disputed crabmeat to NO Cold Storage pursuant to the terms set forth in Louisiana Newpack's 2020 term sheet. Gulf Marine concedes that Louisiana Newpack is its "predecessor in interest."[30] Gulf Marine further acknowledges Louisiana Newpack entered a deposit contract with NO Cold Storage through the November 2021 warehouse receipt.[31] The issue presented is whether the arbitration clause is enforceable against Gulf Marine, who didn't own the crabmeat when the warehouse receipt was issued and never signed a written agreement containing the arbitration clause.

In Louisiana, arbitration agreements apply to nonsignatories, but "only in rare circumstances." *Traders' Mart, Inc. v. AOS, Inc.*, 52,592, p. 8 (La. App. 2 Cir. 4/10/19), 268 So. 3d 420, 427. One such circumstance is when a nonsignatory "embraces" a contract. *ERG Enterprises, LLC v. Green Coast Enter., LLC*, 2019-1104, p. 7 (La. App. 4 Cir. 5/13/20), 299 So. 3d 1194, 1199 (quoting *Traders' Mart*, 52,592, p. 10, 268 So. 3d at 428). A nonsignatory can "embrace" a contract: "(1) by knowingly seeking and obtaining direct benefits from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Id.*, 2019-1104, p. 7, 299 So. 3d at 1199-200 (internal quotations omitted).

In *ERG Enterprises*, the court enforced an operating agreement against nonsignatories. The nonsignatories sued to enforce parts of the agreement, but claimed they did not consent to the arbitration clause in the agreement. *Id.* at pp. 2-3, 299 So. 3d at 1197. Having benefitted from the

30 R. Doc. 13 at ¶ 6.
31 *Id.* at ¶ 11.

agreement and sued to enforce it, the court found the nonsignatories bound by the arbitration clause. *Id.* at p. 8, 299 So. 3d at 1200.

Gulf Marine benefitted from the 2020 term sheet and all the agreements related to the deposit of crabmeat entered by Louisiana Newpack, "its predecessor in interest".[32] When Gulf Marine purchased the crabmeat from Louisiana Newpack, it was already stored in the NO Cold Storage warehouse. Gulf Marine chose to leave it there. Gulf Marine paid storage fees to NO Cold Storage for months.[33] In its complaint, Gulf Marine describes taking over the depositary relationship from "its predecessor in interest." Gulf Marine does not allege it made a new deposit on new terms. Gulf Marine knowingly relied on the agreement of its predecessor and benefitted from it.

Although arbitration agreements must be in writing, the writing need not be signed if the parties' conduct confirms the agreement. *Marino v. Dillard's, Inc.*, 413 F.3d 530, 532 (5th Cir. 2005); *see also In re Succession of Taravella*, 98-834 (La. App. 5 Cir. 4/27/99), 734 So. 2d 149, 151; *Hurley v. Fox*, 520 So. 2d 467, 469 (La. App. 4 Cir. 1988). A party can accept an offer through performance, "[u]nless the law prescribes a certain formality for the intended contract." La. Civ. Code art. 1927.

The 2020 term sheet expressly provided that delivery of the crabmeat to the NO Cold Storage facility would be acceptance of its terms.[34] Louisiana Newpack delivered 1,390 cases of crabmeat to the Jourdan Road warehouse.[35] Thus, Louisiana Newpack accepted the 2020 term sheet and the arbitration clause included in its general terms. By delivering the crabmeat to NO Cold Storage's warehouse pursuant to the 2020 term sheet, Louisiana Newpack agreed to arbitrate.

---

32 *Id.* at ¶ 6.
33 *Id.* at ¶¶ 15, 21–22.
34 R. Doc. 14-3 at 7.
35 R. Doc. 13 at ¶ 11; R. Doc. 14-3 at 5.

By purchasing the crabmeat, leaving it in NO Cold Storage's warehouse, and paying storage fees, Gulf Marine acquired the rights and obligations of its predecessor, Louisiana Newpack. That includes the agreement to arbitrate.

Gulf Marine argues that without a signature, there is no evidence any party consented to the 2020 term sheet.[36] Louisiana Civil Code article 1947 presumes parties do not intend to be bound until they sign a contract in a form they "contemplated."[37] The 2020 term sheet did not contemplate a signature to consent. In fact, it expressly recognized delivery as a form of acceptance.[38] The Article 1947 presumption does not apply.

Lastly, Gulf Marine argues "all of [its] claims arise from alleged violations of the Louisiana Civil Code,"[39] not Lineage's 2020 term sheet. But the complaint and Gulf Marine's conduct demonstrate its reliance on the 2021 warehouse receipt and 2020 term sheet. *Compare Jones v. Singing River Health Services Foundation*, 674 Fed. App'x 382, 387 (5th Cir. 2017) ("[Plaintiff's] claims are not directly dependent on the [contracts at issue]".). Without those documents and the agreements contained in them, the crabmeat Gulf Marine purchased would not have been stored at the Jourdan Road warehouse. Gulf Marine cannot accept the benefits of that storage and deny the corresponding obligations. The court finds Gulf Marine embraced the 2020 term sheet. The claims are referable to arbitration.

**B. The Court Must Stay the Case.**

A court that compels arbitration "shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Gulf Marine requested a stay. That request forecloses dismissal. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). A stay is ordered.

---

36 R. Doc. 28 at 15–16.
37 *Id.* at 15.
38 R. Doc. 14-3 at 7.
39 R. Doc. 28 at 17–18.

## IV. CONCLUSION

**IT IS ORDERED** that Defendant's Motion to Dismiss the First Amended Complaint (Rec. Doc. 14) is **GRANTED IN PART** and **DENIED IN PART**. The court **GRANTS** defendant's motion to compel arbitration. The court **DENIES** defendant's motion to dismiss the complaint.

**IT IS FURTHER ORDERED** that Gulf Marine's request to stay the proceedings pending arbitration (R. Doc. 27) is **GRANTED**. This matter is **STAYED** and **ADMINISTRATIVELY CLOSED** pending conclusion of the arbitration proceedings.

New Orleans, Louisiana, this 10th day of November 2026

WILLIAM J. CRAIN
UNITED STATES DISTRICT JUDGE